

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

GUARDIAN HEALTH SERVICES, LLC,
3105 Franklin Blvd.
Cleveland, Ohio 44113,

THOMAS G. SCHEIMAN,
5800 Ely Vista Drive
Parma, Ohio 44129,

        Plaintiffs,

  -vs-

MICHELLE RENEE HUNTER,
(fka Michelle R. Haggins,
fka Michelle R. Stanich)
9448 Lake Shore Blvd.
Cleveland, Ohio 44108-1043,

YOLANDA GUZMAN,
3665 Gridley Rd.
Shaker Heights, Ohio 44122,

DAVID GUZMAN,
3665 Gridley Rd.
Shaker Heights, Ohio 44122,

TRACY WILLIAMS,
24136 Euclid Avenue  Apt. C3
Euclid, Ohio 44117-1780,

DANA R. LYONS,
9448 Lake Shore Blvd.
Cleveland, Ohio 44108-1043,

NATHANIEL EATMAN,
1096 East 68th Street
Cleveland, Ohio 44103-1729,

CASE NO.:

JUDGE **1:04CV0420**

**JUDGE NUGENT**

**MAG. JUDGE VECCHIARELLI**

**VERIFIED COMPLAINT FOR
TEMPORARY, PRELIMINARY AND
PRELIMINARY INJUNCTION,
DECLARATORY JUDGMENT AND
OTHER RELIEF**

[Jury Demand Endorsed Hereon]

CARL BARTLETT,    )
25731 Farringdon Avenue  )
Euclid, Ohio 44132-1867,  )
            )
JOHN DOES I-V,    )
Address Unknown,    )
            )
    Defendants.   )

For their Complaint against Defendants Michelle Renee Hunter (fka Michelle R. Haggins, fka Michelle R. Stanich) ("Hunter"), Yolanda Guzman, David Guzman, Tracy Williams ("Williams"), Dana R. Lyons ("Lyons"), Nathaniel Eatman ("Eatman"), Carl Bartlett ("Bartlett"), and John Does I-V (collectively, "Defendants"), Plaintiffs Guardian Health Services, LLC ("Guardian") and Thomas G. Scheiman ("Scheiman"), state as follows:

## INTRODUCTION

1. This action arises as a result of the concerted efforts by Defendants to hijack Guardian's home health care business and to exclude Guardian's sole member and owner, Scheiman.

2. Through a scheme and artifice to defraud, Defendants, without the authorization or consent of Scheiman, have engaged in a pattern of racketeering activity designed to enrich themselves at Guardian and Scheiman's expense. They have attempted operate Guardian by holding themselves out as being employed by or affiliated with Guardian and by claiming to direct the affairs of the company by claiming to serve on a nonexistence "Governing Body." In fact, Defendants have conspired to commit several acts of mail fraud and bank fraud, in violation of 18 U.S.C. § 1341, 1344, giving rise claims for violations of the Racketeering Influenced and Corrupt Organization's Act ("RICO"), 18 U.S.C. § § 1961-1966. Further, Defendants have violated Plaintiffs' rights under the common law of the State of Ohio. If allowed to continue,

2

this conduct as set forth below will result in immediate and irreparable harm to Guardian, Scheiman, and Guardian's home health care patients in the Cleveland, Ohio area. The conduct should be stopped immediately.

3.     This Complaint is brought pursuant to 18 U.S.C. §§ 1961-1966 and seeks injunctive relief and monetary damages.   Plaintiffs allege, among other things, that the Defendants have engaged in prohibited racketeering activities in violation of 18 U.S.C. § 1962(c), and that they conspired to violate the racketeering laws in violation of 18 U.S.C. § 1962(d).  In addition, the Plaintiffs have alleged claims for injunctive and monetary relief under state common law.

## THE PARTIES

4.     Guardian is a limited liability company organized and existing under the laws of Ohio with its principal place of business at 3105 Franklin Blvd., Cleveland, Ohio  44113. Guardian is engaged in providing home health care services to patients in the greater Cleveland metropolitan area.

5.     Scheiman is an individual who resides at 5800 Ely Vista Drive, Parma, Ohio 44129. He is the sole member of Guardian and owns 100 percent of the company.

6.     Hunter is an individual who resides at 9448 Lake Shore Blvd., Cleveland, Ohio 44108-1043. She is a former employee of Guardian.

7.     Yolanda Guzman is an individual who resides at 3665 Gridley Road, Shaker Heights, Ohio 44122-5034. She is a former employee of Guardian.

8.     David Guzman is an individual who resides at 3665 Gridley Road, Shaker Heights, Ohio 44122-5034. He is the husband of Defendant Yolanda Guzman.

3

9.    Williams is an individual who resides at 24136 Euclid Avenue, Apt. C, Euclid, Ohio 44117-1780. She is a former employee of Guardian.

10.    Dana R. Lyons is an individual who resides at 9448 Lake Shore Blvd., Cleveland, Ohio 44108-1043. He is the boyfriend of Defendant Hunter.

11.    Nathanial Eatman is an individual who resides at 1096 East 68th Street, Cleveland, Ohio 44103-1729. Upon information and belief, he is Hunter's father

12.    Bartlett is an individual who resides at 25731 Farringdon Avenue, Euclid, Ohio 44132-1867. Upon information and belief, Bartlett was employed as a janitor/maintenance person for rental property owned by Hunter.

13.    John Does I-V are individuals or organizations who knowingly participated in the fraudulent scheme of Defendants. These are individuals or organizations which the Plaintiffs do not currently have enough evidence against to identify or name as defendants, but for whom they anticipate discovery will provide sufficient evidence to name as defendants.

## JURISDICTION AND VENUE

14.    This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because claims against Defendants arise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (c) and (d). Further, this Court has supplemental jurisdiction over the state common law claims asserted in this action pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)-(3), because the events giving rise to the claims and controversies alleged herein have taken place in this judicial district, and pursuant to 18 U.S.C. § 1965(a). Further, for purposes of venue, the parties in this action reside in this judicial district.

4

## FACTS COMMON TO ALL COUNTS

16.     In July 2002, Scheiman formed Guardian as a limited liability company under R.C. § 1705, *et seq.* As the company's sole member, Scheiman and the other businesses that he owns and controls have to date invested approximately $275,000 in the company.

17.     In April 2003, Scheiman hired Hunter to serve as Guardian's administrator and to prepare Medicare and Medicaid applications enabling the company to provide home health care services to patients in Cleveland, Ohio. At no time did the Scheiman or Hunter ever agree that she would receive compensation in the form of a membership interest in the Company. The incentive compensation that Hunter was offered and that she accepted was that she would receive a bonus of 65 percent of any profits generated by Guardian during her employment. During her employment, however, the business did not generate any profits.

18.     At the time that he hired Hunter, Scheiman did not know that she was under investigation by federal and state law enforcement authorities relating to events that occurred during her ownership of Sunrise Home Health Care, Inc., Sunrise Health Services, Inc. , and Sunrise Skilled Services, Inc. (collectively, "Sunrise"). Upon information and belief, those events related to potential bankruptcy fraud, health care fraud, and bank fraud committed by Hunter.

19.     At the time of her employment, Hunter represented to Scheiman that she owned the real property located at 3334 Prospect Avenue, Cleveland, Ohio 44115-2616 (the "Prospect Location").

20.     In August 2003, Guardian began operations as a provider of home health care services for patients who require mental health care and services for mental retardation and developmental disabilities. Guardian began transacting a portion of its business from offices

located at the Prospect Location, where it maintained certain patient files (the "Patient Records"), employee records, reimbursement checks from Medicaid and computer records (collectively, the "Business Records"), and other business information and property.

21.     In June or July 2003, Hunter hired Yolanda Guzman to serve in the position of executive assistant for Guardian.

22.     In July or August 2003, Hunter hired Williams to serve in various administrative positions.  Williams had worked previously for Hunter at Sunrise.

23.     Unbeknownst to Scheiman, Hunter hired various ghost employees, including Defendant Bartlett.  Although the ghost employees received compensation from Guardian, they did not provide any services to the company, but instead provided services directly to Hunter and/or the businesses that she owned or controlled.

24.     On January 20, 2004, Scheiman terminated Hunter's employment with Guardian after learning that Hunter was the subject of federal and state criminal investigations relating to, among other things, events that occurred while she owned Sunrise.  Scheiman has also terminated Yolanda Guzman and Tracy Williams.

25.     At or about that time, Scheiman hired Dr. Kenneth Gossett ("Gossett") to serve as Guardian's Executive Director.

26.     Following their termination, Hunter, Yolanda Guzman, and Williams refused to allow Scheiman to obtain Guardian's original records, files, assets, and funds.  Hunter claimed she owned a membership interest in Guardian, and wrongfully asserted control over those items.  In addition, Hunter, Yolanda Guzman, and Williams have refused to provide Scheiman with information concerning patient care.

6

27.     Hunter immediately then changed the locks on the Prospect Location, deleted Scheiman's security access codes and, upon information and belief, otherwise began interfering with Guardian's business without legal right or justification.

28.     Guardian and Scheiman attempted to gain access to their business records, files, and assets by filing an adversary proceeding in Hunter's Chapter 7 bankruptcy action (*In re Michelle Rene Hunter,* United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, Case No. 03-18602).

29.     On January 21, 2004, Guardian sought a restraining order requiring Hunter to turn over all of the records, files, assets, and funds used by Guardian in conducting its business, including all patient records, business records, Medicare/Medicaid checks, and computers ("Guardian's Business Property").

30.     On January 26, 2004, after a hearing, the Bankruptcy Court entered an Agreed Entry requiring Hunter to turn over certain of Guardian's Business Property.  A true, genuine, and correct copy of the Agreed Entry is attached hereto as Exhibit 1.

31.     The temporary order has not yet been dissolved by the bankruptcy court and remains in effect.

32.     Further, based on Hunter's stipulation that her alleged ownership interest in Guardian did not arise until after she filed her bankruptcy case on June 30, 2003, the bankruptcy court dismissed the adversary proceeding because it lacked jurisdiction on January 28, 2004.  See Exhibit 2.

33.     Although Hunter turned over certain patient and business records and a computer, she did not turn over everything required by the bankruptcy court's order.  In fact, Hunter

improperly and deceitfully turned over a different computer than the one she was required to surrender and failed to surrender all of Guardian's Business Property (as defined above).

34. Because Guardian's mail was being sent to the Prospect Avenue, Scheiman completed and submitted an Official Mail Forwarding Change of Address Order ("Change of Address Order") to the United States Postal Service (the "Postal Service"), requesting that all checks payable to Guardian and other items be delivered to Guardian's new address – 3105 Franklin Blvd., Cleveland, Ohio 44113 ("Guardian's New Address").

35. On January 29, 2004, and without authorization from Scheiman or Guardian, Hunter wrongfully prepared a separate Change of Address Order, instructing the Postal Service to redirect all of Guardian's mail from Guardian's New Address to the Prospect Location. A true, genuine, and correct copy of the Change of Address Order is attached hereto as Exhibit 3.

36. Hunter prepared, signed, and mailed the Change of Address Order to the U.S. Postal Service despite the fact that it contains the following written acknowledgement:

> The person signing this form states that he or she is the person, executor, guardian, authorized officer, or agent of the person for whom mail would be forwarded under this order. Anyone submitting false or inaccurate information on this form is subject to punishment by fine or imprisonment or both under Sections 2, 1001, 1702 and 1708 of Title 18, United States Code.

37. As a result of the Change of Address Order, Hunter and/or Defendants have, without authorization, received mail intended for Guardian.

38. Since January 20, 2004, Defendants have remained in possession or control of Guardian's Business Property.

39. On January 30, 2004, Guardian and Scheiman filed a complaint in State Court in the case captioned *Guardian Health Services, LLC v. Michelle Renee Hunter,* Cuyahoga County Court of Common Pleas, Case No. 52097 (Judge Fuerst) ("Case 520957), seeking a preliminary

injunction enjoining Hunter from attempting to continue operating Guardian and other relief. A true, genuine, and correct copy of the Complaint is attached as Exhibit 4.

40.     In response to the Complaint, Hunter, who was represented by the law firm McIntyre Kahn & Kruse Co., L.P.A., asserted counterclaims against Guardian and Scheiman. A true, genuine, and correct copy of the Answer and Counterclaim is attached as Exhibit 5.

41.     The court scheduled a hearing for February 13, 2004, but the hearing did not go forward and was rescheduled for March 4, 2004.

42.     Since February 13, 2004, Guardian and Scheiman have learned additional facts about Defendants' conduct giving rise to the federal claims in this action.

43.     On February 17, 2004, Hunter called a meeting of the purported governing body of Guardian (the "Governing Body"). Hunter claims that the Governing Body purports to act on Guardian's behalf and claims that it originally was established by in June 2003.

44.     Scheiman, however, never consented to the formation or operation of the Governing Body and did not know about the meeting. There are no documents signed by Scheiman establishing the Governing Body or its members. The Governing Body is a fiction created by Defendants.

45.     Each of the Defendants agreed to participate in a conspiracy giving rise to the Governing Body.

46.     David Guzman, Lyons, Williams, and Eatman attended the meeting, either in person or by telephone, and they signed the Meeting Minutes setting forth the purported resolutions approved at the Meeting. A copy of the Emergency Meeting Minutes of the purported Governing Body are attached hereto as Exhibit 6.

47.     According to the Meeting Minutes, the purported Governing Body resolved to:

9

a.   appoint Hunter as the administrator of Guardian;

b.   terminate Scheiman and Gossett, along with the legal services of Benesch, Friedlander;

c.   resume Guardian's operations at the Prospect Location;

d.   open bank accounts in the name of Guardian;

e.   allow Hunter to engage the services of accounting, legal, and advisory services for Guardian;

f.   grant Hunter authority to accept program reimbursements and disburse funds to conduct Guardian's business;

g.   grant Hunter the authority to employ individuals on Guardian's behalf;

h.   grant Hunter the authority to collect Guardian's records; and

i.   to immediately cause written notification to be sent to all agencies, programs, clients and employees of Guardian of changes.

48.   The Governing Body is a sham designed to thwart Guardian and Scheiman's legitimate efforts to operate and control the business and efforts to obtain access to Guardian's Business Property.

49.   None of the resolutions adopted by the fictitious Governing Body were made with Scheiman's approval. Further, none of the purported members of the Governing Body were ever appointed by Scheiman.

50.   Thereafter, on February 18, 2004, Hunter sent by U.S. mail separate letters to Scheiman, Gossett, and Benesch Friedlander in which she gave notice of their purported termination and attached copies of the purported Meeting Minutes. True, genuine, and correct copies of the letters are attached hereto as Exhibits 7, 8, 9.

10

51.     Further, Hunter sent by U.S. mail a copy of the fictitious Meeting Minutes to agencies, programs, clients, and employees of Guardian, including the Center for Medicare and Medicare Services ("CMMS"). CMMS's 3/2/04 response to the letter is attached as Exhibit 13.

52.     In addition, on February 20, 2004, Hunter, on behalf of the Defendants, sent a letter on Guardian's letterhead to Nanette Kearney ("Kearney"), informing her that the Governing Body had met and had terminated Scheiman and Gossett's employment and had terminated her position as Guardian's Director of Nursing. A copy of the letter is attached as Exhibit 10. The statements contained in the letter were false when made and made with the intent to induce reliance by the recipients.

53.     Further, as set forth below, following the Meeting of the Governing Body held on February 17, 2004, Defendants have set up bank accounts and transferred assets or funds belonging to Guardian in an effort to enrich themselves at the expense of Guardian and Scheiman.

54.     Specifically, on or about February 20, 2004, and in furtherance of the Defendants' conspiracy and the objectives set forth in the Meeting Minutes, Hunter and Guzman opened a checking account, number 00130103763855, at the US Bank branch office located at the Renaissance Office Tower in Cleveland, Ohio.

55.     Hunter and Guzman falsely represented to officials at US Bank that they were authorized representatives of Guardian. In addition, they identified themselves as the authorized signatories for the account.

56.     At the time that the account was opened, Hunter and Guzman deposited into the account an unendorsed Medicaid check in the amount of $29,224.65 that was made payable to Guardian by the Treasurer of the State of Ohio. A certified copy of the check is attached hereto

11

as Exhibit 11 In addition, Hunter and Guzman also withdrew from the US Bank account funds that were payable to Guardian.

57.     Upon information and belief, Defendants have also begun to hire employees, invoice Guardian's patients, and have engaged a law firm to act on their behalf. Specifically, upon information and belief, Defendants, on behalf of the purported Governing Body, engaged the law firm McIntyre Kahn & Kruse Co., L.P.A. ("McIntyre Kahn') to purportedly represent Guardian in litigation against Plaintiffs.

58.     On February 24, 2004, McIntyre Kahn filed an unverified Complaint for Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction and Permanent Injunction, along with a Motion for Temporary Restraining Order in the case captioned *Guardian Health Services LLC v. Thomas G. Scheiman,* Cuyahoga County Court of Common Pleas Case No. 523377 (Judge Boyle) ("Case No. 523377"), purportedly on behalf of Guardian. A true, genuine, and correct copy of the Complaint is attached as Exhibit 12.

59.     At that time, however, McIntyre Kahn law firm was actively representing Hunter in Case No. 520957, where it was pursuing counterclaims against not only against Scheiman but Guardian, the very entity it was purporting to represent in the new litigation. *See* Exhibit 5, pages 8-19.

60.     McIntyre Kahn did not have any authority to file the Complaint in Case No. 523388 on Guardian's behalf. As Guardian's sole owner, Scheiman did not authorize McIntyre Khan to  represent Guardian or act on its behalf. Nor did he ever agree to compensate the McIntyre Kahn in any way.

61.     On February 25, 2004, McIntyre Kahn quickly dismissed Case No. 523377 within minutes after the court:  (a) denied the motion for temporary restraining order, (b) raised

serious ethical concerns about McIntyre Kahn's claim to represent Guardian, and (c) ordered Hunter to immediately appear that afternoon for a deposition.

62.     In an effort to avoid invoking her Fifth Amendment privilege against self-incrimination, Hunter did not appear for the deposition and has avoided appearing for duly noticed depositions.

## COUNT I
## Civil Racketeering In Violation Of 18 U.S.C. § 1962(d)

63.     Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

**A.     RICO Persons**

64.     Defendants are persons as defined in 18 U.S.C. § 1961(3).

**B.     The RICO Enterprise**

65.     The RICO enterprise was created by Defendants and is an association in fact between the Defendants who claim to operate as the "Governing Body." This association in fact is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), and this association in fact is referred to as the "RICO Enterprise."

66.     Each of the Defendants is employed by and/or associated with the RICO Enterprise.

67.     Although the enterprise is an association in fact, and therefore an informal organization, it does have an operating structure. Hunter takes an active, supervisory role in the RICO enterprise and directs the affairs of the enterprise. Yolanda Guzman and Williams are active in the affairs of the enterprise and take orders from Hunter. By serving on the Board, David Guzman, Lyons, Eatman, and Bartlett each participate in the affairs of the enterprise.

13

68.     Further, the Defendants are individuals or entities that are separate from the alleged enterprise itself.

**C.     The RICO Predicate Acts**

69.     Defendants embarked upon activity and a course of conduct, the overall objective of which was to conduct an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

70.     Defendants have participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity, including two or more predicate acts of racketeering activity within the past ten years, as follows:

**Predicate Act No. 1 — Mail Fraud — 18 U.S.C. § 1341**

71.     On or about January 29, 2004, and in furtherance of the RICO enterprise, Hunter submitted a Change of Address Order to the Postal Service, instructing the Postal Service to change Guardian's address back to the Prospect Location.

72.     In furtherance of the RICO Enterprises' scheme, Hunter fraudulently misrepresented to the Postal Service that she was an authorized representative of Guardian and that she had the authority to make the address change.

73.     Hunter made the false representations to obtain checks and other mail that were intended for Guardian.

74.     The foregoing actions by Hunter, made on behalf of the RICO Enterprise, constituted a scheme or device to obtain money and documents by means of false or fraudulent pretenses and/or representations, by means of use of the United States mail, in violation of 18 U.S.C. § 1341.

14

**Predicate Act Nos. 2-4 — Mail Fraud — 18 U.S.C. § 1341.**

75. On or about February 17, 2004, Defendants held a meeting of the Governing Body to further the illegal goals of the Enterprise. The purpose of the meeting was to prepare unauthorized and false Meeting Minutes of unauthorized resolutions of the Governing Body, an entity that does not legally exist.

76. On February 18, 2004, on behalf of the Enterprise and each of the Defendants, Hunter mailed separate letters on Guardian's letterhead to Scheiman, Gossett, and Benesch Friedlander, attaching a copy of the Meeting Minutes. *See* Exhibits 7, 8, 9.

77. In the letters, Hunter, on behalf of the Enterprise and each of the Defendants, claimed to terminate Scheiman and Gossett's employment, and Benesch Friedlander's engagement as counsel for Scheiman and Guardian.

78. At the time that each of the letters were written, none of the Defendants owned any interest in Guardian or had any authority to send any documents on Guardian or Scheiman's behalf.

79. The letters and Meeting Minutes contained false and misleading information.

80. The foregoing actions by Defendants constituted a separate scheme or device to defraud by means of use of the United States mail, in violation of 18 U.S.C. § 1341.

### Predicate Act No. 5 — Mail Fraud — 18 U.S.C. § 1341

81.     Based upon information and belief, beginning at least as early as February 18, 2004, Defendants began mailing letters on Guardian's letterhead to all of the agencies, programs, clients and employees of Guardian (including CMMS – see Ex. 13) providing written notification of the purported Governing Body and the purported changes to Guardian's operations.

82.     The statements contained in each of the written notifications were false when made and made with the intent to induce reliance by the recipients.

83.     Based upon information and belief, each of the fraudulent notifications were sent through the U.S. mail.

84.     Each of the foregoing actions of Defendants constitutes a separate scheme or artifice to defraud, and/or scheme to obtain money by means of false or fraudulent pretenses and/or representations, by means of use of the Unites States mail, in violation of 18 U.S.C. § 1341.

### Predicate Act No. 6 — Mail Fraud — 18 U.S.C. § 1341

85.     On February 20, 2004, Hunter, on behalf of the Defendants, sent a letter on Guardian's letterhead to Nanette Kearney, informing her that the Governing Body had met and had terminated Scheiman and Gossett's employment and had terminated her position as Guardian's Director of Nursing. A copy of the letter is attached as Exhibit 11.

86.     The statements contained in the letter were false when made and made with the intent to induce reliance by the recipients.

87.     The letter was sent through the U.S. mail.

16

88.     The foregoing actions of Defendants constitutes a scheme or artifice to defraud, and/or scheme to obtain money by means of false or fraudulent pretenses and/or representations, by means of use of the Unites States mail, in violation of 18 U.S.C. § 1341.

**Predicate Act No. 7 — Bank Fraud — 18 U.S.C. § 1344**

89.     On or about February 20, 2004, and in furtherance of the RICO Enterprise, Hunter and Guzman opened a checking account, number 00130103763855, at the US Bank branch office located at the Renaissance Office Tower in Cleveland, Ohio.

90.     Hunter and Guzman falsely represented to officials at US Bank that they were authorized representatives of Guardian. In addition, they identified themselves as the authorized signatories for the account.

91.     At the time that the account was opened, Hunter and Guzman deposited into the account an unendorsed Medicaid check in the amount of $29,224.65 that was made payable to Guardian by the Treasurer of the State of Ohio. A certified copy of the check is attached hereto as Exhibit 12.

92.     In furtherance of the RICO Enterprise, Hunter and Guzman also withdrew from the US Bank account funds that were payable to Guardian.

93.     The foregoing actions by Hunter and Guzman, made on behalf of the RICO Enterprise, constituted a scheme to obtain money, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution by means of false or fraudulent pretenses, representations, or promises in violation of 18 U.S.C. § 1344.

**D.     Related and Continued Activity**

94.     All of the predicate acts are part of a common plan on the part of the Defendants to enrich themselves by obtaining and converting Guardian's assets and property and to divert

17

money away from Guardian, its employees, and its sole member Scheiman, through deceptive and surreptitious means.

95. The Defendants' predicate acts are related, are open-ended, involve multiple victims, are continuing, and Defendants' acts and/or predicate acts constitute or pose a threat of further continued criminal activity.

96. Further, at this time, it appears substantially certain that Defendants' will continue committing the mail and wire fraud violations. Based upon their prior acts in depositing and cashing a Medicaid reimbursement check, Plaintiffs anticipate that Defendants will attempt, without authority, to deposit and cash Medicare reimbursement checks, in violation of state and federal law and Plaintiffs' rights. In addition, Plaintiffs anticipate that Defendants will continue to misrepresent their status and affiliation with Guardian when they have been terminated or were never affiliated it Guardian.

**E.     Defendants' Conduct Resulted In Injury to Plaintiffs' Business or Property**

97. As a direct and proximate result of one or more of the foregoing predicate acts in violation of RICO, the Plaintiffs have been injured in their business or property, including but not limited to the following:

        a.     Guardian and Scheiman have been denied access to the records, files, and documents relating to the home health care services that have been provided by Guardian to patients, causing irreparable harm to the business;

        b.     Guardian and Scheiman have been denied access to records, files, and documents which would enable them to determine whether Guardian

remains in compliance with federal and state licensure and insurance requirements;

c.     Defendants have sent letters through the U.S. mails holding themselves out as a the purported Governing Body when no such entity exists, resulting in injury to Guardian's business reputation and goodwill;

d.     Guardian has lost a substantial amount in profits due to the fraudulent transfer of assets and funds by the Defendants;

e.     Guardian's value as an ongoing enterprise has been diminished; and

f.     Scheiman has lost a substantial amount of earnings and income as a result of Defendants' conduct.

## COUNT II
### Conspiracy To Violate Civil Racketeering Laws In Violation Of 18 U.S.C. § 1962(d)

98.     Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

99.     Through their conduct alleged in the Complaint, each of the Defendants knowingly joined the conspiracy to participate in the conduct of the affairs of the RICO Enterprise.

100.     In addition, each of the Defendants committed at least one act in furtherance of the conspiracy, and or consented to the commission of acts by others.

101.     Defendants agreed and conspired to commit and carry out the foregoing violations of 18 U.S.C. § 1962(c) set forth in the foregoing Count I, including some or all of the foregoing alleged predicate acts, and thereby have also violated 18 U.S.C. § 1962(d).

102.    As a direct and proximate result of the foregoing conduct, Plaintiffs have been injured in their business and property, and have sustained actual damages, in an amount which will be proven at trial.

## COUNT III
### Declaration Of Scheiman's Ownership Rights in Guardian

103.    Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

104.    As described above, Hunter claims to hold an ownership interest in Guardian.

105.    There is an actual, real, substantial and justiciable controversy now existing between Scheiman and Hunter with respect to the ownership of Guardian.

106.    Pursuant to 28 U.S.C. §§ 2201-2202, Guardian and Scheiman are entitled to a declaration that Scheiman is the sole owner of the membership interests in Guardian and that no interest has been conveyed, at any time, to Hunter.

## COUNT IV
### Tortious Interference With A Business Relationship

107.    Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

108.    Defendants are: (a) holding themselves out to the public and Guardian's patients as being employed by or affiliated with Guardian or as serving as the company's Governing Body; (b) directing Guardian's employees; (c) retaining a computer and business records belonging to Guardian in violation of orders issued by the bankruptcy court; (d) retaining other computers, office furnishings, and equipment that belong to Guardian and/or Scheiman; (e) improperly interfering with the U.S. mail belonging to Guardian; (f) fraudulently depositing and cashing checks payable to Guardian; (g) using Guardian's funds and assets without permission;

(h) dissipating Guardian's funds and assets without permission; and (f) otherwise interfering with Guardian's business.

109. Defendants have engaged in the above-referenced conduct without privilege to do so.

110. As a direct and proximate result of such wrongful actions by the Defendants, Plaintiffs have suffered damages in an amount to be determined at trial.

## COUNT V
### Civil Conversion

111. Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

112. Scheiman is the proper owner of Guardian and all of Guardian's Business Property including but not limited to, all of Guardian's computers, office furnishings and equipment.

113. By wrongfully exerting dominion and control over such items for their own use, Defendants have committed civil conversion in violation of Ohio common law.

114. As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT VI
### Trespass To Chattels

115. Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

116. By wrongfully denying Plaintiffs access to Guardian's former offices, computers, office furnishings and equipment, Defendants have dispossessed Plaintiffs of their chattels in violation of Ohio common law.

117.    As a direct and proximate result of result of such dispossession, Plaintiffs have been damaged in an amount to be determined at trial.

### COUNT VII
### Replevin

118.    Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

119.    In violations of the Agreed Entry, Hunter knowingly turned over to Plaintiffs the wrong computer and has retained Guardian's Business Property.

120.    Plaintiffs as the rightful owner of Guardian's Business Property as well as all computers, office furnishings and equipment, accounts, and U.S. mail directed to Guardian are entitled to the immediate possession of such items that the Defendants have wrongfully detained.

### COUNT VIII
### Misappropriation Of Trade Secrets

121.    Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

122.    As a result of their positions with Guardian, Hunter, Yolanda Guzman, and Williams were entrusted with confidential and proprietary business and financial information, which Guardian and Scheiman protected from disclosure to others, including, but not limited to, client lists, client addresses and phone numbers, financial statements, personnel records, patient files, business plans, methods of operation and industry patterns.

123.    Guardian derives significant economic value from this confidential and proprietary information and, therefore, takes safeguards to protect such information.

124.    Based upon information and belief, Hunter, Yolanda Guzman, and Williams have misappropriated and/or is intending to misappropriate Guardian's confidential and proprietary

22

information and trade secrets for her own benefit and personal profits. The actions by Hunter, Yolanda Guzman, and Williams as described above constitute misappropriation of trade secrets in violation of Ohio Revised Code §§ 1333.61 - 1333.69.

125.    This proprietary information the Defendants Hunter, Yolanda Guzman, and Williams acquired is not well known outside of the company. Further, only a few of Guardian's employees were privy to this information.

126.    Because of the value of the information, Scheiman implemented protections to prevent its disclosure. It would take a substantial period of time for another to acquire the same information.

127.    As a direct and proximate result of the misappropriation or intended misappropriation of confidential proprietary information and trade secrets by Hunter, Yolanda Guzman, and William, Plaintiffs will suffer substantial losses to their business in an amount to be determined at trial.

128.    Hunter, Yolanda Guzman, and Williams should be enjoined from misappropriating Guardian's trade secrets.

### COUNT IX
### Civil Conspiracy

129.    Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

130.    As set forth above, the Defendants entered into a malicious combination to injure Plaintiffs in their person or property in a way not competent for the individual Defendants to do alone.

131. As a direct and proximate result of the unlawful acts committed by Defendants' in furtherance of their conspiracy, as describe above, Plaintiffs have sustained damages in an amount to be determined at trial.

**COUNT X**
**Injunctive Relief – Temporary, Preliminary and Permanent Injunction**

132. Plaintiffs restate and incorporate by reference the foregoing paragraphs in the Complaint as though fully stated herein.

133. Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, Guardian and Scheiman move the court of for injunctive relieve (a) ordering that Defendants immediately turn over to Plaintiffs all of Guardian's Business Property; (b) ordering Defendants to cease using Guardian's name; (c) ordering Defendants to cease acting as Guardian, the Governing Body, or as employees of Guardian; (d) ordering Defendants to identify all bank and other accounts that they have opened and/or in to which they have deposited Guardian funds; (e) ordering that Defendants provide Plaintiffs with records for and an accounting of all services provided to Guardian's patients; (f) ordering that Defendants provide Plaintiffs with an accounting for all revenue and expenses relating to Guardian; and (g) ordering that Defendants cease committing acts of mail fraud and bank fraud.

134. Plaintiffs seek this preliminary relief to protect themselves and Guardian's patients from irreparable harm while the Court determines Plaintiffs' Complaint. Moreover, Defendants will not suffer any prejudice or damage resulting from the grant of preliminary relief.

135. Guardian is likely to succeed on the merits of this case because the Defendants: (a) do not hold an ownership interest in Guardian, (b) was only employees of Guardian, and (c) were terminated from their positions.



24

136. Guardian's business is in the home health care industry and if Defendants are permitted to misappropriate Guardian's trade secrets and to interfere with the business, such actions will have a detrimental impact on patient care, and undermine the good reputation of Guardian's business such that it would damage the unique business relationships that Guardian has developed. While some interference may be monetarily compensable, harm to Guardian's patients or to Guardian's business reputations and relationships is irreparable harm for which no adequate remedy is available at law.

137. The interests of the Guardian's customers – the patients – outweigh any harm that the Defendants, at best discharged employees, will suffer in being enjoined from interfering with Guardian's business, including directing Guardian's employees, holding themselves out as being affiliated, in any way, with Guardian, denying Guardian access to information and files, and interfering with U.S. mail belonging to Guardian.

138. Guardian is, therefore, entitled to temporary, preliminary and permanent injunctive relief.

WHEREFORE, Plaintiffs request that the Court enter judgment:

        a.     On Count I, awarding Plaintiffs actual and treble damages in an amount to be determined at trial, joint and severally against all Defendants;

        b.     On Count II, awarding Plaintiffs actual and treble damages in an amount to be determined at trial, joint and severally against all Defendants;

        c.     On Count III, Declaring that Scheiman is the sole owner of Guardian and that Hunter does not own and has never owned a membership interest in the company;

25

d.    On Count IV, awarding Plaintiffs compensatory damages in an amount to be determined at trial;

e.    On Count V, awarding Plaintiffs compensatory damages in an amount to be determined at trial;

f.    On Count VI, awarding Plaintiffs compensatory damages in an amount to be determined at trial;

g.    On Count VII, awarding Plaintiffs compensatory damages in an amount to be determined at trial;

h.    On Count VIII, awarding Plaintiffs compensatory damages in an amount to be determined at trial;

i.    On Count IX, awarding Plaintiffs compensatory damages in an amount to be determined at trial;

j.    On Count X, awarding Plaintiffs temporary, preliminary, and permanent injunctive relief, enjoining Defendants from selling, transferring, encumbering, altering or using Guardian's and Scheiman's assets; enjoining Defendants from interfering with and usurping Guardian's and Scheiman's property rights; enjoining Defendants from interfering with the U.S. mails belonging to Guardian or otherwise violating 18 U.S.C. § 1341; enjoining Defendants from committing bank fraud in violation of 18 U.S.C § 1344 relating to accounts and funds owned by Guardian; enjoining Defendants from interfering with Guardian and Scheiman's business; enjoining Defendants from directing Guardian's employees; enjoining Defendants from holding themselves out as being affiliated with

26

Guardian and as members of the purported Governing Body; and requiring the Defendants immediately give Plaintiffs access to all records, computers, and documents and other Business Property of Guardian; and awarding Plaintiffs all other just and proper equitable relief.

k.   On Counts I-IX, awarding Plaintiffs punitive damages in an amount to be determined at trial;

l.   Awarding Plaintiffs their reasonable costs and attorneys' fees incurred herein;

m.   Awarding Plaintiffs such other and further relief as the Court deems just and appropriate.

Dated: March **2<sup>d</sup>**, 2004
      Cleveland, Ohio

**OF COUNSEL:**

**BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP**

Respectfully submitted,

DAVID W. MELLOTT (0019485)
CRAIG L. MOORE (0063550)
ROBERT C. PSAROPOULOS (0067296)
2300 BP Tower
200 Public Square
Cleveland, Ohio 44114-2378
Telephone: (216) 363-4500
Facsimile: (216) 363-4588
dmellott@bfca.com, cmoore@bfca.com,
rps.bfca.com

Attorneys for Plaintiffs Guardian Health
Services, LLC and Thomas G. Scheiman

27

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

_____
One of the attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GUARDIAN HEALTH SERVICES, LLC, *et al.*, | ) CASE NO.: |
| | ) |
| Plaintiffs, | ) |
| | ) JUDGE |
| -vs- | ) |
| | ) |
| MICHELLE RENEE HUNTER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## VERIFICATION

I, Thomas G. Scheiman, am the sole member and owner of Guardian Health Services, LLC ("Guardian"). I have read the Verified Complaint to be filed in this action and know the allegations and contents thereof. The same are true and correct to the best of my knowledge, information, and belief based upon my personal knowledge, the information obtained from the files, records, and employees of Guardian, information obtained from the litigation described in the body of the Complaint, and conversations with individuals who possess knowledge and information.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 2, 2004, in _____Parma_____, Ohio.

_____
THOMAS G. SCHEIMAN