## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| GUARDIAN HEALTH SERVICES, LLC, et al. | ) ) ) | CASE NO. 1:04 CV 0420 |
| | ) | JUDGE NUGENT |
| Plaintiffs, | ) ) | |
| -vs.- | ) ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) ) | **DEFENDANT'S AMENDED ANSWER** |
| MICHELLE RENEE HUNTER, ET AL | ) ) | **TO COMPLAINT AND AMENDED COUNTERCLAIM** |
| | ) | **(Jury Demand Endorsed Hereon)** |
| Defendant. | ) | |

Defendant Nathaniel D. Eatman, Pro se ("Defendant") respectfully submits her Amended Answer to Plaintiffs' Complaint and Amended Counterclaim pursuant to Rules 12, 13 and 15(A) of the Ohio Rules of Civil Procedure.

## AMENDED ANSWER

1.      Defendant denies the allegations contained in paragraph 1 of Plaintiffs' Complaint.

2.      In response to paragraph 2 of Plaintiffs' Complaint, Defendant admits that Michelle Hunter has operated Guardian, with the consent of Guardian's duly appointed Governing Body, a copy of which is attached as Exhibit 6 to Plaintiffs' Complaint. Defendant denies every other allegation contained in paragraph 2 of Plaintiffs' Complaint .

3.      Defendant denies each and every allegation contained in paragraph 3 of Plaintiffs' Complaint not expressly admitted herein to be true .

4.      In response to paragraph 4 of Plaintiffs' Complaint, Defendant admits that Guardian is a limited liability company organized under the laws of Ohio

1

12.     In response to paragragh 12 of Plaintiff's Complaint, Defendant denies that Carl Bartlett is a former janitor/maintenance person for rental property owned by Hunter.

13.     Defendant denies the allegations contained in paragraph 13 of Plaintiffs' Complaint.


## JURISDICTION AND VENUE

14.     Defendant denies the allegations contained in paragraph 14 of Plaintiffs' Complaint.

15.     Defendant denies the allegations contained in paragraph 15 of Plaintiffs' Complaint not expressly admitted herein to be true .

16.     Defendant denies each and every allegation contained in paragraph 16 of Plaintiffs' Complaint not expressly admitted herein to be true . Defendant admits that Scheiman has invested approximately $275,000.00 in the company.

17.     Defendant denies each and every allegation contained in paragraph 17 of Plaintiffs' Complaint.

18.     Defendant denies each and every allegation contained in paragraph 18 of Plaintiffs' Complaint not expressly admitted herein to be true .

19.     Defendant admits the allegation contained in paragraph 19 of Plaintiffs' Complaint.

20.     Defendant denies the allegations contained in paragraph 20 of Plaintiffs' Complaint.

21. Defendant denies the allegation contained in paragraph 21 of Plaintiffs' Complaint not expressly admitted herein to be true .

22. Defendant admits the allegation contained in paragraph 22 of Plaintiffs' Complaint.

23. Defendant denies each and every allegation contained in paragraph 23 of Plaintiffs' Complaint.

24. Defendant denies each and every allegation contained in paragraph 24 of Plaintiffs' Complaint not expressly admitted herein to be true . Defendant admits that Scheiman attempted to terminate Hunter's, Guzman's and Williams' employment.

25. Defendant denies the allegation contained in paragraph 25 of Plaintiffs' Complaint.

26. Defendant denies each and every allegation contained in paragraph 26 of Plaintiffs' Complaint.

27. In response to paragraph 27 of Plaintiffs' Complaint, Defendant admits that: a) Hunter refused to leave the Premises on January 20, 2004, b) Hunter has asserted an ownership in interest in Guardian, c) the Premises are under her legal control as the property owner, d) Hunter changed the locks on the Premises and changed the security codes as owner of the building. Defendant denies each and every other allegation contained in paragraph 27 of Plaintiffs' Complaint not expressly admitted herein to be true.

28. Defendant admits the allegations contained in paragraph 28 of Plaintiffs' Complaint.

29. Defendant admits the allegations contained in paragraph 29 of Plaintiff's complaint.

30. In response to paragraph 30 of Plaintiffs' Complaint, Defendant admits that the Bankruptcy Court entered an Agreed Entry dated January 26, 2004, a copy of which is attached as Exhibit 1 to Plaintiffs' Complaint.

31. Defendant denies the allegation contained in paragraph 31 of Plaintiffs' Complaint.

32. Defendant admits the allegation contained in paragraph 32 of Plaintiff's complaint.

33. In response to paragraph 33 of Plaintiffs' Complaint, Defendant admits that Hunter turned over patient and business records and a computer. Defendant denies each and every other allegation contained in paragraph 10 of Plaintiffs' Complaint not expressly admitted herein to be true.

34. In response to paragraph 34 of Plaintiffs' Complaint, Defendant denies the allegations contained in the first sentence for want of direct personal knowledge

35. In response to paragraph 35 of Plaintiff's Complaint, Defendant admits that Hunter instructed the Post Office on January 29, 2004 to redirect delivery of Guardian's mail to its original and proper business address located at 3334 Prospect Avenue.

36.     Defendant admits the allegations contained in paragraph 36 of Plaintiffs' Complaint.

37.     Defendant denies the allegation contained in paragraph 37 of Plaintiffs' Complaint. Defendant admits that Hunter had full legal authority to act.

38.     Defendant admits the allegation contained in paragraph 38 of Plaintiff's Complaint.

39.     Defendant admits the allegation contained in paragraph 39 of Plaintiff's Complaint.

40.     Defendant admits the allegation contained in paragraph 40 of Plaintiff's Complaint.

41.     Defendant admits the allegation contained in paragraph 41 of Plaintiff's Complaint.

42.     Defendant denies the allegation contained in paragraph42 of Plaintiffs' Complaint.

43.     Defendant admits the allegation contained in paragraph 43 of Plaintiff's Complaint, with the exceptions of the terms "purported" and "purports".

44.     Defendant denies the allegations contained in paragraph 44 of Plaintiffs' Complaint. Defendant admits that Scheiman was not required to sign documents establishing the Governing Body or its members.

45.     Defendant denies the allegation contained in paragraph 45 of Plaintiffs' Complaint.

46.     Defendant admits the allegation contained in paragraph 46 of Plaintiffs' Complaint.

47.     Defendant admits each and every allegation contained in paragraph 47 of Plaintiffs' Complaint.

48.     Defendant denies each and every allegation contained in paragraph 48 of Plaintiffs' Complaint.

49.     Defendant admits each and every allegation contained in paragraph 49 of Plaintiffs' Complaint with the exception of the terms, "fictitious" and "purported".

50.     Defendant admits each and every allegation contained in paragraph 50 of Plaintiffs' Complaint with the exception of the term, "purported".

51.     Defendant admits each and every allegation contained in paragraph 51 of Plaintiffs' Complaint with the exception that CMS' letter dated March 2, 2004 is not a response to a letter sent to CMS in response to the February 17, 2004 actions of the Governing Body.

52.     Defendant admits each and every allegation contained in paragraph 52 of Plaintiffs' Complaint not expressly admitted herein to be false . Defendant denies that the statements contained in the letter to Nanette Kearney were false.

53.     Defendant admits each and every allegation contained in paragraph 53 of Plaintiffs' Complaint not expressly admitted herein to be false . Defendant denies that actions were an attempt to enrich herself at the expense of Guardian and Scheiman.

54.     Defendant admits each and every allegation contained in paragraph 54 of Plaintiffs' Complaint not expressly admitted herein to be false . Defendant

denies that actions were in furtherance of a program of conspiracy, but were in compliance with the directives of the duly-appointed Governing Body.

55.   Defendant denies the allegations contained in paragraph 55 of Plaintiffs' Complaint not expressly admitted herein to be true . Defendant admits that Hunter and Guzman identified themselves as the authorized signatories for the account in compliance with the directives of the duly appointed Governing Body.

56.   Defendant admits each and every allegation contained in paragraph 56 of Plaintiffs' Complaint.

57.   Defendant admits each and every allegation contained in paragraph 57 of Plaintiffs' Complaint.

58.   Defendant admits each and every allegation contained in paragraph 58 of Plaintiffs' Complaint.

59.   Defendant admits each and every allegation contained in paragraph 59 of Plaintiffs' Complaint.

60.   Defendant denies each and every allegation contained in paragraph 60 of Plaintiffs' Complaint not expressly admitted herein to be true . Defendant admits that Scheiman did not agree to compensate McIntyre Kahn.

61.   Defendant admits each and every allegation contained in paragraph 61 of Plaintiffs' Complaint not expressly admitted herein to be false . Defendant denies allegation (b) for want of personal knowledge.

62.     Defendant denies each and every allegation contained in paragraph 62 of Plaintiffs' Complaint.

## COUNT I

63.     Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein

64.     Defendant admits the allegation contained in paragraph 64 of Plaintiffs' Complaint.

65.     Defendant denies each and every allegation contained in paragraph 65 of Plaintiffs' Complaint not expressly admitted herein to be true .

66.     Defendant denies each and every allegation contained in paragraph 66 of Plaintiffs' Complaint.

67.     Defendant denies each and every allegation contained in paragraph 67 of Plaintiffs' Complaint not expressly admitted herein to be true .

68.     Defendant admits the allegation contained in paragraph 68 of Plaintiffs' Complaint.

69.     Defendant denies each and every allegation contained in paragraph 69 of Plaintiffs' Complaint.

70.     Defendant denies each and every allegation contained in paragraph 70 of Plaintiffs' Complaint.

71.     Defendant denies each and every allegation contained in paragraph 71 of Plaintiffs' Complaint not expressly admitted herein to be true . Defendant admits that Hunter requested the U.S. Postal service to redirect Guardian's

mail to the Prospect location in compliance with the directives of the duly appointed Governing Body.

72.    Defendant denies each and every allegation contained in paragraph 72 of Plaintiffs' Complaint not expressly admitted herein to be true . Defendant admits that Hunter represented to the U.S. Postal service that Hunter was an authorized representative of Guardian and had the authorization to redirect the mail to the Prospect location in compliance with the directives of the duly appointed Governing Body.

73.    Defendant denies the allegations contained in paragraph 73 of Plaintiffs' Complaint not expressly admitted herein to be true . Defendant admits that the mail was redirected to the Prospect location in an attempt to receive mail intended for Guardian.

74.    Defendant denies each and every allegation contained in paragraph 74 of Plaintiffs' Complaint not expressly admitted herein to be true .

75.    Defendant denies each and every allegation contained in paragraph 75 of Plaintiffs' Complaint not expressly admitted herein to be true .

76.    Defendant denies each and every allegation contained in paragraph 76 of Plaintiffs' Complaint.

77.    Defendant denies each and every allegation contained in paragraph 77 of Plaintiffs' Complaint.

78.    Defendant denies each and every allegation contained in paragraph 78 of Plaintiffs' Complaint.

79.     Defendant admits each and every allegation contained in paragraph 79 of Plaintiffs' Complaint not expressly admitted herein to be true .

80.     Defendant denies each and every allegation contained in paragraph 80 of Plaintiffs' Complaint.

81.     Defendant admits each and every allegation contained in paragraph 81 of Plaintiffs' Complaint not expressly admitted herein to be false . Defendant denies that the notifications sent were fraudulent.

82.     Defendant denies each and every allegation contained in paragraph 82 of Plaintiffs' Complaint.

83.     Defendant admits each and every allegation contained in paragraph 83 of Plaintiffs' Complaint not expressly admitted herein to be false . Defendant denies that the actions taken were in furtherance of a RICO Enterprise.

84.     Defendant admits each and every allegation contained in paragraph 84 of Plaintiffs' Complaint not expressly admitted herein to be false . Defendant denies that the representations made were fraudulent.

85.     Defendant admits the allegation contained in paragraph 85 of Plaintiffs' Complaint.

86.     Defendant admits each and every allegation contained in paragraph 86 of Plaintiffs' Complaint not expressly admitted herein to be false . Defendant denies that any withdrawals were in furtherance of a RICO Enterprise.

87.     Defendant denies each and every allegation contained in paragraph 87 of Plaintiffs' Complaint.

88. Defendant denies each and every allegation contained in paragraph 88 of Plaintiffs' Complaint.

89. Defendant denies each and every allegation contained in paragraph 89 of Plaintiffs' Complaint.

90. Defendant denies each and every allegation contained in paragraph 90 of Plaintiffs' Complaint.

91. Defendant denies each and every allegation contained in paragraph 91 of Plaintiffs' Complaint.

## COUNT II

92. Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein.

93. Defendant denies the allegation contained in paragraph 93 of Plaintiffs' Complaint.

94. Defendant denies the allegation contained in paragraph 94 of Plaintiffs' Complaint.

95. Defendant denies the allegation contained in paragraph 95 of Plaintiffs' Complaint.

96. Defendant denies each and every allegation contained in paragraph 96 of Plaintiffs' Complaint.

## COUNT III

97. Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein.

98. In response to paragraph 98 of Plaintiffs' Complaint, Defendant admits that Hunter contends that Hunter has an ownership interest in Guardian and has served as an employee of Guardian as appointed by Guardian's Governing Body.

99. In response to paragraph 98 of Plaintiffs' Complaint, Defendant admits that there is a justiciable controversy between Defendant and Plaintiff Scheiman for which the Court should declare the rights and obligations of the parties

100. Defendant denies each and every allegation contained in paragraph 100 of Plaintiffs' Complaint.

## COUNT IV

101. Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein.

102. In response to paragraph 102 of Plaintiffs' Complaint, Defendant admits the allegations contained in subparts a), and b). Defendant denies each and every other allegation contained in paragraph 102 of Plaintiffs' Complaint not expressly admitted herein to be true.

103. Defendant denies the allegations contained in paragraph 103 of Plaintiffs' Complaint.

104. Defendant denies the allegations contained in paragraph 104 of Plaintiffs' Complaint.

## COUNT V

105.     Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein.

106.     Defendant denies the allegations contained in paragraph 106 of Plaintiffs' Complaint.

107.     Defendant denies the allegations contained in paragraph 107 of Plaintiffs' Complaint.

108.     Defendant denies the allegations contained in paragraph 108 of Plaintiffs' Complaint.

## COUNT VI

109.     Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein.

110.     Defendant denies the allegations contained in paragraph 110 of Plaintiffs' Complaint.

111.     Defendant denies the allegations contained in paragraph 111 of Plaintiffs' Complaint.

## COUNT VII

112.     Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein.

113.     Defendant denies the allegations contained in paragraph 113 of Plaintiffs' Complaint.

114.     Defendant denies the allegations contained in paragraph 114 of Plaintiffs' Complaint.

## COUNT VIII

115.     Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein.

116.     In response to paragraph 116 of Plaintiffs' Complaint, Defendant admits that Hunter has been privy to certain confidential and business information relating to Guardian, most of which Hunter generated and/or developed.

117.     Defendant admits the allegations contained in paragraph 117 of Plaintiffs' Complaint.

118.     Defendant denies the allegations contained in paragraph 118 of Plaintiffs' Complaint.

119.     Defendant admits the allegations contained in paragraph 119 of Plaintiffs' Complaint.

120.     Defendant denies the allegations contained in paragraph 120 of Plaintiffs' Complaint.

121.     Defendant denies the allegations contained in paragraph 121 of Plaintiffs' Complaint.

122.     Defendant denies the allegations contained in paragraph 122 of Plaintiffs' Complaint.

## COUNT IX

123.     Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein.

124.     Defendant denies the allegations contained in paragraph 124 of Plaintiffs' Complaint.

125.     Defendant denies the allegations contained in paragraph 125 of Plaintiffs' Complaint.

## COUNT X

126.     Defendant restates and incorporates by reference the foregoing paragraphs as though fully stated herein.

127.     In response to paragraph 127 of Plaintiffs complaint, Defendant moves the court to deny Plaintiffs' request for injunctive relief in subparts (a), (b), (c), (d), (e), and (f). Defendant denies the allegation contained in paragraph 127,subpart (g) of Plaintiffs' complaint.

128.     In response to paragraph 128 of Plaintiffs' complaint, Defendant denies each and every allegation. Defendant, patients and employees of Guardian will suffer significant damage should the court grant the preliminary relief.

129.     In response to paragraph 129 of Plaintiffs' complaint, Defendant denies each and every allegation.

130.     In response to paragraph 130 of Plaintiff's complaint, any injury and damage Plaintiffs allegedly suffered or may suffer, which Defendant denies, are the result of Plaintiffs' own acts or omissions and/or of other persons or entities not under the actual or constructive direction or control of Defendant.

131.     In response to paragraph 131 of Plaintiff's complaint, any injury and damage that Guardian's patients allegedly suffered or may suffer, which Defendant denies, are the result of Plaintiffs' own acts or omissions and/or of other persons or entities not under the actual or constructive direction or control of Defendant.

132.     In response to paragraph 132 of Plaintiff's Complaint, Defendant moves the court to deny Plaintiffs' request for injunctive relief in subparts (c), (j), (k), and (n). Defendant denies that any party is entitled to any judgment or any relief against her in any type or amount or for any reason whatsoever in subparts (a), (b), (d), (e), (f), (g), (h), (i), (l), (m) in Plaintiffs' Complaint.

## AFFIRMATIVE DEFENSES

133.     Plaintiffs' Complaint should be dismissed because it fails to state any claim against Defendant upon which relief can be granted.

134.     Plaintiffs' Complaint should be dismissed for failure to join one or more parties.

135.     Plaintiffs' Complaint should be dismissed for lack of standing.

136.     Plaintiffs' Complaint should be dismissed because any injury and damage Plaintiffs allegedly suffered or may suffer, which Defendant denies, are the result of Plaintiffs' own acts or omissions and/or of other persons or entities not under the actual or constructive direction or control of Defendant.

17

137.    Plaintiffs' Complaint should be dismissed due to an intervening and/or superseding cause.

138.    Plaintiffs' Complaint should be dismissed because any alleged act or omission of Defendant was not the proximate cause of any alleged injury or damage suffered by Plaintiffs.

139.    Plaintiffs' Complaint should be dismissed by operation of one or more of the doctrines of waiver, estoppel, laches, fraud, unclean hands, acquiescence and/or ratification.

140.    Plaintiffs' Complaint should be dismissed by operation of one or more of the doctrines of contributory negligence, comparative negligence and/or assumption of the risk.

141.    Plaintiffs' claims may be barred in whole or in part by a failure to mitigate damages.

142.    Plaintiffs' Complaint should be dismissed since it is frivolous.

143.    Plaintiffs' Complaint should be dismissed due to Scheiman's breach of contracts and/or agreements with Defendant.

144.    Plaintiffs' Complaint should be dismissed because all actions of Defendant have been undertaken with reasonable justification.

145.    Plaintiffs' Complaint should be dismissed under the doctrines of res judicata and/or collateral estoppel.

146.    Plaintiffs' Complaint should be dismissed due to a failure of consideration.

147. Plaintiffs' Complaint should be dismissed because Scheiman breached his duty of good faith and fair dealing to Defendant.

148. Plaintiffs' Complaint should be dismissed because Scheiman rendered any performance by Defendant impossible.

149. Plaintiffs' Complaint should be dismissed because Scheiman totally frustrated Defendant's performance under the parties' agreements and the object and purpose of the parties' dealings.

150. Plaintiffs' Complaint should be dismissed due to Scheiman's fraud, misrepresentation and/or other wrongful conduct.

151. Plaintiff's Complaint should be dismissed because none of the actions Scheiman seeks to take were approved by Guardian's Governing Body, all such actions are contrary to the interests of Guardian and the directives of its Governing Body, and Scheiman's employment with Guardian was terminated by Guardian's Governing Body on February 17-18, 2004.

152. Defendant reserves the right to assert additional affirmative defenses to Plaintiffs' Complaint as they may become available through discovery or otherwise.

**WHEREFORE**, having fully answered Plaintiffs' Complaint, Defendant demands that it be dismissed, with prejudice, at Plaintiffs' costs, and that Defendant be awarded a reimbursement of all attorney's fees, expenses and costs incurred in responding to and defending against same.

## AMENDED COUNTERCLAIM

For the Amended Counterclaim against Plaintiff Scheiman, Defendant states as follows:

1.      Defendant is an individual presently residing in Cuyahoga County, Ohio.

2.      Plaintiff Thomas G. Scheiman ("Scheiman") is an individual believed to be presently residing in Cuyahoga County, Ohio, and who has conducted business and activity and/or caused injury in this jurisdiction giving rise to the claims for relief set forth herein.

3.      Plaintiff Guardian Health Services LLC ("Guardian") is a limited liability company organized under the laws of the State of Ohio with its principal place of business in Cuyahoga County, Ohio.

## COUNT I

4.     Defendant Hunter has or should have a 65% ownership interest in Guardian, which Scheiman refuses to acknowledge or recognize, and Scheiman instead claims that he is the sole owner of Guardian.

5.     As such, a justiciable controversy exists between the parties as to the position of Defendant Hunter and Scheiman and their respective ownership of Guardian. Defendant seeks a determination from this Court of the rights and obligations of the parties declaring Hunter's ownership interest in Guardian.

## COUNT II

6.     Defendant reavers and realleges the allegations contained in paragraphs 1-5 of her Amended Counterclaim which are incorporated herein by reference as if fully rewritten.

7.     Subsequent to June 30, 2003, Defendant Hunter and Scheiman had an oral and/or written agreement that Hunter would have a 65% ownership interest in Guardian and corresponding share of profits.

8.     Hunter has performed all her obligations under the parties' agreement and all conditions precedent have been satisfied.

9.     Scheiman has failed and refused to perform and will not give Hunter her 65% ownership interest and has breached his agreement with Hunter.

10.     As a direct, proximate and foreseeable result of Scheiman's breach, Hunter has suffered injury and damage for which Scheiman is liable in an amount to be proven at trial.

## COUNT III

11.    Defendant reavers and realleges the allegations contained in paragraphs 1-10 of the Amended Counterclaim which are incorporated herein by reference as if fully rewritten.

12.    Subsequent to June 30, 2003 Scheiman represented to Hunter orally and in writing that Hunter would receive a 65% ownership interest in Guardian.

13.    Scheiman's statements were made with knowledge they were false and/or with reckless disregard of their truth or falsity, or with no present intention to perform, and were made with the intent that Hunter would rely on them.

14.    Hunter justifiably relied to her detriment on Scheiman's misrepresentations by continuing to devote substantial time, effort and expense to developing Guardian's business and investing significant sums toward developing and building Guardian's business.

15.    As a direct, proximate and foreseeable result of Scheiman's fraudulent conduct, Hunter has been injured by her reliance on Scheiman's misrepresentations and false statements, in a sum to be determined at trial.

16.    Scheiman's fraudulent conduct is and has been intentional, malicious, willful, wanton, outrageous, and/or in conscious or reckless disregard for the rights of and consequences to Hunter, rendering Scheiman further liable for punitive damages and attorney's fees in an amount to be determined.

## COUNT IV

17.    Defendant reavers and realleges the allegations contained in paragraphs 1-16 of the Amended Counterclaim which are incorporated herein by reference as if fully rewritten.

18.    Hunter and Scheiman jointly developed a plan to start and operate Guardian whereby Defendant would provide all management and supervise administrative functions, apply

22

for licenses, hire and train staff and case managers, obtain clients and patient referrals and Scheiman would contribute funds to finance payroll and refer patients from his residential care facility.

19. Hunter developed plans and strategies for starting up and operating Guardian, in which Hunter shared and developed competitive business information and also invested significant time, effort and funds in training, planning and marketing.

20. As a result of their words and actions, Hunter and Scheiman created an express or implied agreement by which they combined money, property, efforts, skill and knowledge to carry out a single business purpose for profit, having a community of interest as to the purpose of the undertaking, thereby creating a joint venture and/or partnership under law by which Hunter was to own 65% of Guardian and Scheiman 35%.

21. Due to the nature of their relationship, Scheiman owed Hunter a fiduciary duty of the highest standards of loyalty, good faith, integrity, mutual trust and confidence.

22. Scheiman breached the parties' joint venture/partnership agreement and also breached his fiduciary duty to Hunter by refusing to give Hunter her ownership interest, attempting to terminate her employment, taking control over Guardian's assets, records and revenue to Hunter's detriment, all to Scheiman's sole benefit.

23. As a direct, proximate and foreseeable result of Scheiman's conduct, Hunter has been damaged in an amount to be proven at trial for which Scheiman is liable.

24. Scheiman's conduct is and has been intentional, malicious, willful, wanton, outrageous and/or in conscious or reckless disregard for the rights of and consequences to Hunter, rendering Scheiman further liable for punitive damages and attorney's fees in an amount to be determined.

## COUNT V

25.     Defendant reavers and realleges the allegations contained in paragraphs 1-24 of the Amended Counterclaim which are incorporated herein by reference as if fully rewritten.

26.     Implied in every contract is the covenant that each party will exercise good faith toward and deal fairly with the other, which duty Scheiman owed to Defendant.

27.     Scheiman breached his covenant with Hunter by refusing to give Hunter her 65% ownership interest, attempting to terminate her employment, taking control over Guardian's assets, records and revenue to Hunter's detriment, all to Scheiman's sole benefit.

28.     As a direct, proximate and foreseeable result of Scheiman's conduct, Hunter has been damaged in an amount to be proven at trial for which Scheiman is liable.

29.     Scheiman's conduct is and has been intentional, malicious, willful, wanton, outrageous and/or in conscious or reckless disregard for the rights of and consequences to Hunter, rendering Scheiman further liable for punitive damages and attorney's fees in an amount to be determined.

## COUNT VI

30.     Defendant reavers and realleges the allegations contained in paragraphs 1-29 of the Amended Counterclaim which are incorporated herein by reference as if fully rewritten.

31.     In furtherance of the relationship with Scheiman and Guardian, Hunter expended substantial sums in purchasing office equipment, furniture and supplies, paying utilities, paying portions of the payroll expense, developing and implementing patient care arrangements, billing and reimbursement procedures, training and manpower, among others, and focused all her efforts on said relationship.

32.     Based on Scheiman's representations and conduct, Defendant reasonably expected to have a 65% ownership interest in Guardian to be able to recoup and build on her investments and expenditures, all of which were requested, encouraged and/or expected by Scheiman.

33.     Scheiman's purported termination of Hunter and exertion of complete control over Guardian to the exclusion of Hunter has totally frustrate Hunter's efforts, was contrary to the parties' agreements, and has and will prevent from Hunter being able to recoup her investments and expenditures and enjoy the benefit of the substantial time, effort and expense Hunter devoted to building Guardian.

34.     As a direct, proximate and foreseeable result of Scheiman's conduct, Hunter has been damaged in an amount to be proven at trial for which Scheiman is liable.

35.     Scheiman's conduct is and has been intentional, malicious, willful, wanton, outrageous and/or in conscious or reckless disregard for the rights of and consequences to, Hunter rendering Scheiman further liable for punitive damages and attorney's fees in an amount to be determined.

36.     In addition, Scheiman is equitably estopped from terminating Hunter and exerting complete control over Guardian to the exclusion of Hunter, so all Defendants pray for injunctive relief preventing Scheiman from taking and continuing such action.

## COUNT VII

37.     Defendant reavers and realleges the allegations contained in paragraphs 1-36 of her Amended Counterclaim which are incorporated herein by reference as if fully rewritten.

38.     Scheiman and Guardian have received the benefit of expertise, services, equipment, marketing, business planning and confidential information from. Hunter

39. By breaching his promises and agreements with, Hunter and by the purported termination of and Hunter exertion of complete control over Guardian to the exclusion of, Hunter Scheiman has failed to compensate f Hunter or the substantial benefits he has received, and Scheiman retains those benefits without just compensation therefore.

40. Scheiman has b Hunter een and will continue to be unjustly enriched if allowed to retain the benefits he received from without compensating. Hunter

41. As a direct, proximate and foreseeable result of the unjust enrichment of Scheiman, Hunter as been damaged in an amount to be proven at trial for which Scheiman is liable.

42. Scheiman's conduct is and has been intentional, malicious, willful, wanton, outrageous and/or in conscious or reckless disregard for the rights of and consequences to Hunter, rendering Scheiman further liable for punitive damages and attorney's fees in an amount to be determined.

## COUNT VIII

43. Defendant reavers and realleges the allegations contained in paragraphs 1-42 of her Amended Counterclaim which are incorporated herein by reference as if fully rewritten.

44. Scheiman has failed and refused to pay Hunter wages Hunter has earned in violation of O.R.C. 4113.15.

45. As a direct, proximate and foreseeable result of the wrongful conduct of Scheiman, h Hunter as been damaged in an amount to be proven at trial for which Scheiman is liable.

## COUNT IX

46.     Defendant reavers and realleges the allegations contained in paragraphs 1-45 of her Amended Counterclaim which are incorporated herein by reference as if fully rewritten.

47.     Because of their relationship and dealings Scheiman owe Hunter fiduciary duties, including those as between limited liability company members, partners and/or joint venturers.

48.     Scheiman has breached his fiduciary duties owed to. Hunter

49.     As a direct, proximate and foreseeable result of Scheiman's breach of fiduciary duty, Hunter as suffered injury and damage in an amount to be proven at trial for which Scheiman is liable.

50.     Scheiman's conduct is and has been intentional, willful, wanton, outrageous, malicious and/or in conscious or reckless disregard for the rights of and consequences to Hunter, rendering Scheiman further liable for punitive damages and attorney's fees in an amount to be determined.

## COUNT X

51.     Defendant reavers and realleges the allegations contained in paragraphs 1-50 of her Amended Counterclaim which are incorporated herein by reference as if fully rewritten.

52.     Based on the conduct and actions of Scheiman, Defendant is entitled to injunctive relief to prevent irreparable immediate injury to Hunter and Guardian.

53.     As part of Guardian's obtaining and maintaining its Medicare license, Guardian is and has been required to comply with all applicable Medicare regulations, standards and conditions of participation.

54.    One of the conditions of participation and standards Guardian had to satisfy and must continue to comply with is the establishment of a Governing Body in accordance with 42 CFR § 484.14(b).

55.    42 CFR § 484.14(b) provides as follows:

(b)    Standard: Governing body.  A governing body (or designated persons so functioning) assumes full legal authority and responsibility for the operation of the agency.  The governing body appoints a qualified administrator, arranges for professional advice as required under § 484.16, adopts and periodically reviews written bylaws or an acceptable equivalent, and oversees the management and fiscal affairs of the agency.

56.    As part of applying for its Medicare license Guardian established a Governing Body of seven (7) individuals.  Several members of the Governing Body met on June 1, 2003 and agreed to assume full legal authority and responsibility for the operation of the agency, i.e. Guardian Health Services, L.L.C., appointed Michelle R. Hunter as Administrator, adopted bylaws and agreed to oversee the management and fiscal affairs of the agency, all in accordance with 42 CFR § 484.14(b).

57.    As part of applying for its Medicare license Guardian notified Medicare of the names of all the Governing Body members and then provided additional information on the Governing Body members as requested by Medicare. A copy of Governing Body submissions is attached as **Exhibit 1** to Defendant's Amended Answer.

58.    Medicare subsequently approved Guardian's license application in August 2003, including the designated Governing Body members, and Guardian was issued its Medicare license certificate in October 2003.

59.    Defendant is likely to succeed on the merits of this case because Hunter is supposed to have a 65% ownership interest in Guardian and Scheiman is not supposed to be the sole owner, which Scheiman has acknowledged orally and in writing.

28

60.     Defendant is also likely to succeed on the merits of this case because Guardian's Governing Body is the sole legal authority for the agency, has the sole right to appoint an administrator and hire professional services and oversee the management and fiscal affairs of the agency pursuant to federal law as a condition of obtaining and maintaining Plaintiff's Medicare license, and all Scheiman's actions have been undertaken without any authority from the Governing Body and in direct contravention of resolutions and directives of the Governing Body.

61.     Guardian's business is home health care services for patients who require mental health care and services for mental retardation and developmental disabilities, and if Scheiman is allowed to continue his taking over of control of Guardian to the exclusion of, an Hunter disregarding the authority and actions of the Governing Body, patient care will be irreparably harmed, Guardian's Medicare license will be in jeopardy of suspension or revocation and valuable relationships with staff, case managers and potential sources of patient referrals will be irreparably damaged.

62.     Beginning at least as early as January 2004, Scheiman, ostensibly as the "sole owner" of Guardian, began taking action detrimental to Guardian's operation and jeopardizing Guardian's Medicare license, all without any authority from the Governing Body, and detrimental to Defendant's interest in Guardian, including but not limited to the following:

a)      allegedly terminating Hunter as Guardian's Administrator, in spite of her appointment by Guardian's Governing Body and expertise and invaluable experience in administering and providing home health care services;

b)      appointing an alleged substitute administrator, Kenneth Gossett ("Gossett"), who does not have the experience, knowledge or ability to run

29

Guardian's home health care business without jeopardizing patient care, Medicare compliance and the viability of Guardian's Medicare license;

c) appointing Gossett as administrator without the approval of Guardian's Governing Body, in violation of Medicare regulations and jeopardizing Guardian's Medicare license;

d) re-directing Guardian's mail from its office at 3334 Prospect to Vantage Place at 3105 Franklin Blvd. which denies Guardian's home health care workers daily access to doctor orders which are necessary and critical for them to provide proper care to patients, along with denying the skilled staff access to mailed items necessary to ensure Medicare compliance and proper operation of the business;

e) terminating Yolanda Guzman as executive assistant, in spite of her expertise and invaluable experience in administering and providing home health care services, and then reinstating her at a lower salary almost one (1) week later;

f) threatening the termination of all home health care workers hired by Defendant which would create a disruption in patient care, destroy continuity of care for these mental health, mental retardation and developmentally disabled patients and lose valuable staff resources trained and developed over months;

g) terminating several home health care workers hired by Defendant which has created a disruption in patient care, destroyed continuity of care for these mental health, mental retardation and developmentally disabled

patients and lost valuable staff resources trained and developed over months;

h) refusing to release paychecks of employees, which is in violation of law, risks their quitting and jeopardizes patient care and disruption of services;

i) instructing direct care staff (home health aides) to call in "call-offs" to Gossett at Vantage Place rather than to the skilled staff at Guardian's office at 3334 Prospect, which, upon information and belief, is causing patients to go without care in violation of Medicare regulations;

j) diverting calls from Guardian's office at 3334 Prospect to Vantage Place which means that, upon information and belief, the Director of Nursing and Supervising Physician are not being contacted relative to patient care, in violation of Medicare regulations and adversely affecting patient care;

k) instructing certain staff not to attend care coordination meetings mandated by Medicare regulations, in violation of Medicare regulations and adversely affecting patient care;

l) terminating the Director of Nursing, Amelia Early, and replacing her with a substitute who did not have the required Delegated Nursing Certification required by Ohio Department of MRDD regulations for dispensing medications, such that Guardian was in violation of Federal and State regulations and Guardian's Contract Agreement with the Cuyahoga County Board of Mental Retardation and Developmental Disabilities;

adversely affects Guardian's business and ability to grow; and

n)  hiring Benesch, Friedlander, Coplan & Aronoff ("BFCA") to attempt to seize control of Guardian's business and assets, including filing baseless lawsuits against Defendant, all without the required authority of the Governing Body or duly-appointed Administrator, and to the detriment of Guardian's interests.

63.  As a result of the actions of Scheiman, an emergency meeting of the Governing Body was called for February 17, 2004 to take corrective action to cure the areas of non-compliance caused by Scheiman and his unauthorized attempt to seize control of Guardian and oust Defendant as Administrator.

64.  On February 17, 2004 Guardian's Governing Body resolved to terminate any employment capacity of Scheiman and Gossett, terminate the services of BFCA, re-affirm the appointment of Michelle Hunter as Administrator, notify all necessary people of the changes, open bank accounts, re-direct mail service to Guardian's office at 3334 Prospect, engage professional services, accept reimbursements and disburse funds, employ staff and collect all Guardian records.  See Plaintiffs' **Exhibit 9**.

65.  On February 18, 2004 letters were delivered to Scheiman, Gossett and BFCA terminating their employment and services and demanding the return of all Guardian records and funds to 3334 Prospect by 9:00 a.m. on February 19, 2004.  See Plaintiffs' **Exhibits 7, 8, and 9**.

66.  Scheiman, Gossett and BFCA have refused to comply with the directives of Guardian's Governing Body and are still attempting to operate Guardian's business to the

m) informing providers and referral sources that Defendant is no longer affiliated with Guardian which damages Defendant's reputation and

detriment and injury of Guardian patients and Defendant's interest in Guardian, and jeopardizing Guardian's Medicare license and continued existence.

67.     Scheiman's actions harm patient care, threaten the viability of Guardian, jeopardize Guardian's very valuable Medicare license and relationships with doctors, staff and patients and adversely affect Defendant's interest in Guardian for which there is no adequate remedy at law other than injunctive relief.

68.     The interests of Guardian's patients and employees outweigh any alleged harm that Scheiman, a 35% minority owner, would suffer by being enjoined from disregarding the decisions and actions of Guardian's Governing Body, and being required to comply with the Governing Body's directives, allegedly terminating Hunter and adversely affecting Guardian's business by continuing the conduct noted above and taking other action detrimental to Guardian's patients, Medicare license and business interests together with the interests of Defendant herein.

69.     Therefore, Defendant is entitled to injunctive relief as set forth below.

WHEREFORE, Defendant demands judgment on the Counterclaim in Defendant's favor and against Scheiman as follows:

A.      For a declaratory judgment that Hunter is an owner of 65% of Guardian and Scheiman is an owner of 35% of Guardian;

B.      For a declaration and/or decree of specific performance requiring Guardian's records to reflect that Hunter is an owner of 65% of Guardian and Scheiman is an owner of 35% of Guardian;

C.      For compensatory damages in an amount in excess of $25,000;

33

D. For punitive damages in an amount sufficient to punish Scheiman and deter future wrongful conduct, but not less than $100,000;

E. For attorney's fees and expenses in an amount to be proven at trial or hearing;

F. For pre-judgment and post-judgment interest at the maximum rate allowed at law;

G. Costs of this action; and

H. For an injunction:

1. preventing Scheiman and/or anyone in concert with him from terminating Hunter or any other employee of Guardian hired by Defendant;

2. reaffirming Hunter's reinstatement to her position as Administrator of Guardian with all rights, privileges and authority conferred upon her prior to January 16, 2004;

3. reinstating Yolanda Guzman to her position as executive assistant to Hunter with all rights, privileges and authority conferred upon her prior to January 16, 2004;

4. removing Scheiman from any employment position with Guardian and requiring him to turn over to Guardian's Administrator, Michelle Hunter, all original records, files, assets and funds in his care, custody and control;

5. removing Gossett from his position as alleged Administrator with Guardian and requiring him to turn over to Guardian's Administrator, Michelle Hunter, all original records, files, assets and funds in his care, custody and control;

6. terminating the services of BFCA and requiring it to turn over to Guardian's Administrator, Michelle Hunter, all original records, files, assets and funds in its care, custody and control;

7. requiring Scheiman to return all mail service for Guardian to 3334 Prospect and not changing such service or directing any mail for Guardian to any address other than 3334 Prospect;

8. requiring Scheiman to return all phone service and facsimile transmissions for Guardian to 3334 Prospect and not changing such service or directing any telephone calls or facsimile transmissions for Guardian to any location other than 3334 Prospect;

9. preventing Scheiman from taking any action which would place Guardian out of compliance with all applicable Medicare regulations;

10. preventing Scheiman from taking any action which would adversely affect patient care including disruption and/or lack of continuity of care and service; and

11. requiring Scheiman to follow all resolutions and directives of Guardian's Governing Body.

I.    For any other legal or equitable relief to which Defendant has shown to be

entitled or is otherwise appropriate under applicable law.

Respectfully submitted,

NATHANIEL D. EATMAN, , Pro se

*Telephone Consent*

NATHANIEL D. EATMAN,
3334 Prospect Avenue
Cleveland, OHIO 44115
(216) 426-6000
Fax (216) 426-0735

## JURY DEMAND

Defendant hereby demands a trial by jury on all issues properly tried to a jury, with the maximum number of jurors allowed at law.

*Telephone Consent*

Nathaniel D. Eatman, , Pro se

## PROOF OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT'S AMENDED ANSWER TO COMPLAINT AND AMENDED COUNTERCLAIM (Jury Demand Endorsed Hereon) was served via hand delivery this 23nd day of **March 2004** upon:

David W. Mellott, Esq.
**Attorney for Plaintiffs**
Benesch, Friedlander, Coplan
& Aronoff, LLP
2300 BP Tower
200 Public Square
Cleveland, OH  44114-2378

NATHANIEL D. EATMAN,